UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

ONE STEP UP, LTD.,

Plaintiff,

- against -

J.B. HUNT TRANSPORATION SERVICES,
INC.,

Defendant.

--------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/22/06
```

**MEMORANDUM AND ORDER**

05 Civ. 7197 (NRB)

One Step Up, Ltd. ("plaintiff or "One Step Up"), a New York
corporation, brings this action under both federal law and
diversity jurisdiction against J.B. Hunt Transportation
Services, Inc. ("defendant" or "J.B. Hunt"), a company based in
Arkansas. Plaintiff seeks damages arising from defendant's
alleged failure to satisfactorily deliver three shipments of
women's wear apparel to a Wal-Mart distribution center.
Defendant moves for summary judgment against plaintiff;
plaintiff, in turn, cross-moves for summary judgment. For the
reasons set forth below, defendant's motion is granted, and
plaintiff's cross-motion is denied.

## BACKGROUND[1]

Plaintiff One Step Up is an importer, manufacturer, and distributor of women's wear apparel. Joint Stipulation ("JS") ¶ 1. Defendant J.B. Hunt is a motor carrier, engaged in the provision of trucking and transportation services. Defendant's Rule 56.1 Statement ("Def. 56.1 Stmt.") ¶ 1; Plaintiff's Rule 56.1 Statement ("Pl. 56.1 Stmt.") ¶ 1. At issue in this case are three shipments (the "July", "August" and "September" shipments, or shipments #1-3, respectively) of women's wear apparel, purchased by Wal-Mart from plaintiff, that defendant was retained to deliver to a Wal-Mart distribution center in Sharon Springs, New York. JS ¶¶ 2-3. Wal-Mart hired Transplace, a shipping logistics company, to arrange for the transportation of the loads from Miami to the distribution center; Transplace then hired J.B. Hunt to transport the shipments. Id. at ¶ 3-4. Wal-Mart found shortages in each shipment delivered, and took exception at the time of their delivery. JS ¶ 8. Wal-Mart noted these exceptions on the bills of lading and/or the delivery slips of each of the shipments. Id. Plaintiff One Step Up did not file claims with J.B. Hunt directly for any of the cargo shortages. Instead, Transplace and Wal-Mart filed claims relating to shipping shortages to J.B.

---

[1] Except where indicated, there are no genuine issues regarding the following facts.

Hunt. The claims for shipments #1 and #3 were withdrawn and J.B. Hunt rejected the claim for shipment #2 on the basis of the sealed nature of the cargo. After claims for shipments #1 and #3 were withdrawn by the claimants, and after J.B. Hunt rejected the claim for shipment #2, Wal-Mart adjusted its accounts with plaintiff One Step Up to reflect the losses in cargo. Plaintiff then brought this case to seek compensation from defendant for the losses caused by Wal-Mart's deduction in its accounts resulting from shortages in the shipments. Since the timing of the events related to each of the three shipments is relevant to our discussion, each shall be described in turn.[2]

## A. July Shipment ("Shipment #1")

J.B. Hunt picked up the July shipment, containing 3,521 cartons of apparel goods, on or about July 8, 2003, and delivered them to Wal-Mart on July 15, 2003. Plaintiff's Complaint ("Pl. Compl.") ¶ 5; Declaration of Robert Briere ("Briere Decl.") ¶ 5 & App. D; Affidavit of Victor Abriano ("Abriano Aff.") ¶ 9. According to plaintiffs, on September 23, 2003, Wal-Mart deducted $32,630.40 in connection with plaintiff's invoicing for the July shipment, to reflect the agreed price and invoice value of 618 cartons which were missing

_____

[2] Although the dates on which these events occurred are material to the issue at hand, both parties oftentimes specify dates imprecisely by using the phrase "on or about." Any disputes with regard to dates are duly noted.

3

from the shipment upon arrival; however, upon plaintiff's protest, Wal-Mart reversed this deduction on November 12, 2003. Pl. Compl. ¶ 8; Abriano Aff. ¶ 17. Wal-Mart, it appears, then attempted to recoup its losses from J.B. Hunt directly. On December 15, 2003, defendant received a notice of a claim filed by Wal-Mart for the July shipment in the amount of $32,683.20; subsequently, on January 21, 2004, defendant received written notice from Wal-Mart, dated January 16, 2004, indicating it was withdrawing its claim against J.B. Hunt with regard to the July shipment. Briere Decl. App. G, Bates No. 2; Deposition of Tracy Kremer ("Dep. Kremer") at 21. On February 2, 2004, J.B. Hunt received written notice of a claim filed by Transplace, dated January 30, 2004, for the July shipment in the amount of $32,683.20. Declaration of Tracy Kremer ("Decl. Kremer") Ex. A. Then, Wal-Mart, for the second and final time, on December 22, 2004, deducted $32,630.40 from its account with One Step Up to reflect the shortages associated with the July shipment. Abriano Aff. ¶ 18, Ex. D. On January 7, 2005, defendant J.B. Hunt received written notice that Transplace's claim relating to the July shipment had been cancelled as well. Decl. Kremer ¶ 5, Ex. B.

## B. August Shipment ("Shipment #2")

The August shipment consisted of 2,985 cartons of apparel goods. Pl. Compl. ¶ 6, Abriano Aff. ¶ 10. Defendant J.B. Hunt

4

picked up the August shipment from plaintiff on or about August 26, 2003, and delivered it to Wal-Mart on or about September 5, 2003. Pl. Compl. ¶ 6, Briere Decl. ¶ 6, App. E & G. On February 25, 2004, defendant received notice of a claim for the August shipment filed by Transplace in the amount of $7,397.76. Dep. Kremer at 19, Decl. Briere App. G. Transplace sent to J.B. Hunt a series of letters, dated March 25, April 26, and May 24, 2004, requesting resolution of its claim. Pl. Ex. 12, 13, 15. J.B. Hunt then sent written notification to Transplace on September 21, 2004 denying its claim on the basis of a continuous seal delivery. Pl. Ex. 5; Dep. Kremer at 19; Decl. Briere App. G. On September 30, 2004, the cargo claims manager of Transplace sent the cargo claims manager of J.B. Hunt a letter stating that Transplace could not "accept this denial based on the fact that this was a Driver Count load and the driver signed for 2,985 pieces. Only 2,940 pieces were received." Pl. Ex. 18. Subsequently, on April 12, 2005, Wal-Mart informed One Step Up that it had received 61 cartons fewer than had been picked up by J.B. Hunt.[3] Pl. Compl. 9; Abriano Aff. ¶ 19. Wal-Mart then charged back and debited One Step Up's account with Wal-Mart a sum of $4,157.76, reflecting the agreed

---

[3] We are aware of the discrepancy between the number of missing pieces as noted in the Transplace letter and the number in Wal-Mart's letter to One Step Up. This difference, however, is not material to our decision.

price and invoice value of the apparel goods which Wal-Mart did not receive in the August shipment. Id. at 20.

## C. September Shipment ("Shipment #3")

Defendant picked up the September shipment, which consisted of 2,782 cartons of apparel goods, from plaintiff on or about September 22, 2003, and delivered it to Wal-Mart on or about October 2, 2003.[4]  Pl. Compl. ¶ 7; Abriano Aff. ¶ 11; Briere Decl. ¶ 6 & App. E. According to plaintiff, on December 15, 2003, Wal-Mart advised One Step Up that it had received 984 cartons fewer than J.B. Hunt had picked up, and as a result it deducted $34,516.80 in connection with plaintiff's invoicing for the September shipment for cargo shortages. However, again upon protest by plaintiff, Wal-Mart reversed the deduction on January 15, 2004. Pl. Compl. ¶ 10; Abriano Aff. ¶ 21. On March 9, 2004, J.B. Hunt received notice of a claim filed by Transplace with regard to the September shipment in the amount of $60,220.80. Dep. Kremer at 20; Decl. Briere App. G. Transplace followed its claim with letters dated May 7, June 8, and July 6, 2004, to J.B. Hunt demanding that it resolve the open claim. Pl. Ex. 14, 16, 17. The last of these letters, dated July 6, 2004, noted that federal regulations required resolution of

---

[4] Plaintiff believes that the shipment was received by Wal-Mart "on or about September 30, 2003." Abriano Aff. ¶ 21. The inconsistency of dates is but one week, and both parties use the approximate phrase "on or about" to describe the dates. We find this discrepancy not to be material to this case.

claims within 120 days, and that if a claim could not be processed within that stated period, the carrier must write to the claimant every 60 days to advise the claimant of the status of the claim and the reasons in delay. Pl. Ex. 17. Eventually, Wal-Mart deducted $60,220.80 from its account with One Step Up on December 8, 2004 due to the shortages associated with the September shipment. Abriano Aff. ¶ 22. Transplace then notified J.B. Hunt, in a letter dated December 14, 2004, that the claim for the September shipment had been cancelled. Dep. Kremer at 23; Decl. Briere App. G, Bates No. 18.

## D. J.B. Hunt's Processing of Claims

Defendant deposed Tracy Kremer, Cargo Claims Manager at J.B. Hunt, with regard to the documentation and the processing of the claims for the shipments at issue here. As a matter of course, for claims filed against J.B. Hunt less than nine months after the date of delivery, a J.B. Hunt claims clerk creates a physical file folder for the claim and enters the claim into a computer, which assigns a claim number. Dep. Kremer at 9-10. Claims filed more than nine months from the date of delivery are not entered into the regular claims system, as the load order number has already been archived from J.B. Hunt's system; instead, they are entered into a separate spreadsheet. Id. at 10-11. Claims are then taken to the claim adjuster, who begins an investigation by pulling all order documents in the J.B. Hunt

7

system relating to the load, and then evaluates the documents to determine if the carrier should pay the claimant or deny the claim. Id. at 11-12. Claims in excess of $5,000, including the three shipments at issue here, are adjusted by Ms. Kremer herself. Id. at 13. On average, claims take between 60 to 90 days from the date the claim is filed until the payment or denial of the claim. Id. If a claim remains open 120 days after it was filed, J.B. Hunt notifies the claimant of the status of the claim, and again every 60 days thereafter. Id. at 15. This notice takes the form of monthly reports, printed every 30 days on the first of each month, detailing each claimant's new claims filed since the previous report, any claims they already had on file, and the status of claims, including those which have been open for more than 120 days. Id. at 15-16. However, J.B. Hunt did not retain a copy of these notices, and thus they did not become part of the claim files.[5] Id. at 29. Ms. Kremer noted that she was unaware of any requirement that a copy of these notices be retained. Id. at 30.

_____

[5] Ms. Kremer, in her deposition, noted that there is no record of any notices sent to any claimant, and that she understood these notices to have been sent to the claimants as a matter of "[s]tandard procedure." Dep. Kremer at 29-30. According to Ms. Kremer, the transmittal of these notices is "indirectly" under Ms. Kremer's supervision, and she herself never sees the notices. Id. Instead, the claims assistant takes computer printouts of notices, stuffs them into envelopes, and mails them to claimants. Id.

8

Plaintiff has submitted letters, mentioned above, from Transplace to J.B. Hunt demanding resolution of the second and third claims. Pl. Ex. 12, 13, 15 (letters regarding shipment #2); Pl. Ex. 14, 16, 17 (letters regarding shipment #3). These letters do not indicate whether Transplace had received notification from J.B. Hunt via monthly reports, as Ms. Kremer suggests would have been the case for claims open longer than 120 days; instead, they request that J.B. Hunt resolve the claims expediently.

**E. The Present Controversy**

This complaint was originally filed in the Supreme Court, New York County, on July 19, 2005; it was subsequently removed to this Court on August 10, 2005 pursuant to 28 USC §§ 1441, 1445, on the basis of the provisions of 28 U.S.C. § 1337, which confers original jurisdiction to this Court over any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies, and pursuant to 49 U.S.C. §§ 10101 et seq., which regulates interstate transportation via railways.[6] Notice of Removal ¶ 7. Both parties jointly stipulated that the time limitations as set forth in the Uniform Straight Bill of

---

[6] In the alternative, plaintiff also alleged that federal jurisdiction would be proper on the basis of diversity, as the parties are from diverse states and the amount in controversy exceeds $75,000. See Notice of Removal ¶ 7.

Lading, which specifies that "[c]laims for loss or damage must
be filed within nine months after the delivery of the property
(or, in the case of export traffic, within nine months after
delivery at the port of export), except that claims for failure
to make delivery must be filed within nine months after a
reasonable time for delivery has elapsed."   JS ¶ 7; National
Motor Freight Classification Uniform Straight Bill of Lading §
3(b).   Defendant moves for summary judgment on the basis that
plaintiff did not file written claims against defendant within
the nine month limitation, and is thus time barred from pursuing
the present action.   Plaintiff responds by asserting that
defendant failed to respond to the claims filed by Wal-Mart and
Transplace in accordance with 49 C.F.R. § 1005.5, and thus is
estopped from insisting on plaintiff's compliance with the nine
month requirement for filing claims.   Plaintiff also cross-moves
for summary judgment, asserting that it has established a prima
facie case under the Carmack Amendment, codified at 48 U.S.C. §§
14706 et seq. (governing liability for interstate transportation
carriers), and that defendant has failed to show it was not
negligent, nor that the damage or loss was due to one of the
excepted causes which relieve a carrier from liability.

## DISCUSSION

## A.   Standard for Summary Judgment

10

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the evidence submitted must be viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Even if parties dispute material facts, summary judgment must be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Golden Pacific Bancorp. v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (internal citations and quotation marks omitted). In addition, once the moving party has made a sufficient showing, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." Id. (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

11

**B. The Carmack Amendment**

This case is governed by the 1906 Carmack Amendment of the Interstate Commerce Act, under which a buyer or seller may recover directly from an interstate common carrier in whose care the buyer or seller's goods are damaged. See 49 U.S.C. § 14706; Windows, Inc. v. Jordan Panel Systems Corp., 177 F.3d 114, 117-118 (2d Cir. 1999). The Carmack Amendment and the accompanying federal regulations which implement it require that carriers such as J.B. Hunt issue a receipt or bill of lading for goods they receive for transportation. 49 U.S.C. § 14706(a)(1); Windows, 177 F.3d at 118. Thereafter, the common carrier is liable for loss or damage to goods to anyone entitled to recover under the terms of the bill of lading or receipt. 49 U.S.C. § 14706(a)(1); see also Windows, 177 F.3d at 118; Calka v. North American Van Lines, Inc., 2001 WL 434871, at *2 (S.D.N.Y. 2001). In addition, the federal regulations which accompany the Carmack Amendment impose restrictions on the manner and form that claims must take. Under these regulations, a carrier is barred from paying claims for loss or damage to cargo unless the claim was filed with the carrier within the time limits specified by the bill of lading. 49 C.F.R. § 1005.2.

The parties agree that the nine month time limitation to file claims, found in the Uniform Bill of Lading, is applicable to the three shipments in this case. In addition, they agree

12

that at no time did plaintiff One Step Up file any written claims against the defendant J.B. Hunt prior to the initiation of this suit.  Defendant argues that since compliance with this time limitation is a mandatory condition precedent for recovery under federal law which cannot be waived by the carrier, the plaintiff's current action is time-barred from any recovery.  In so doing, defendant relies on the Supreme Court's decision in Chesapeake Ohio Railroad v. Martin, 51 U.S. 209 (1931).

In the Second Circuit, the nine month requirement to file claims pursuant to the Uniform Bill of Lading has been strictly construed and enforced.  The leading case on this issue is Pathway Bellows, Inc. v. Blanchette, 630 F.2d 900, 901 (2d Cir. 1980), cert. denied, 450 U.S. 915 (1981).  In that case, Pathway Bellows, the plaintiff, contracted with a receiving carrier, the San Diego & Arizona Eastern Railway Co. ("SD&A"), to transport a shipment of metal joints from California to New York.  Penn Central, the defendant carrier, delivered the shipment in a damaged condition to its point of destination on October 22, 1974.  Id.  Pathway Bellows mailed a letter, containing all the elements necessary to constitute a proper written claim, to SD&A on July 22, 1975, the last day of the nine month period; however, the letter was not received by SD&A until one day after the nine month claim period had expired.  Id.  The Circuit held that because SD&A had not received the letter until one day

13

after the expiration of the nine month claim period, the claim did not meet the terms required by the bill of lading; thus, plaintiff had failed to comply with a contractually imposed condition precedent to maintain an action to recover damages for the shipment, and consequently defendants were entitled to summary judgment. Id. at 902, 905. The court noted that "[a]lthough it may appear Draconian to require that Pathway Bellows lose a $40,000 recovery because its claim letter was received one day late, Pathway Bellows has identified no special circumstances that would entitle it to be relieved of the admittedly severe consequences of its own procrastination." Id. at 905. Thus, One Step Up's failure to file a written claim against J.B. Hunt within nine months ordinarily would bar it from pursuing the present action.

Plaintiff, however, argues that defendant's failure to comply with federal regulations governing carriers' processing of claims renders it estopped from raising a defense that plaintiff's claim is time barred. One Step Up specifically points to the often-cited footnote ten of Pathway Bellows, which notes a potential exception to the otherwise strict enforcement of the nine month condition precedent. The footnote reads as follows:

Had any conduct on the part of Penn Central [the carrier] misled Pathway Bellows [the consignor/shipper] into believing that there was no need to file a claim . . . ,

14

Penn Central might have been held estopped from insisting on Pathway Bellows's compliance with the timely written claim requirement contained in the bill of lading. Similarly, if Pathway Bellows could not, in the exercise of reasonable diligence, have ascertained the extent of its loss within the 9 month claim filing period, untimely filing of the completed claim might be viewed as excusable. Nothing in the present case, however, indicates that the reason for the untimely submission of Pathway Bellows's claim was attributable to either of these factors or to any factors beyond Pathway Bellows's control.

In other words, the Pathway Bellows footnote suggests two situations under which estoppel may be appropriate: (1) where conduct on the part of J.B. Hunt misled One Step Up into believing that a claim need not be filed; and (2) where One Step Up could not, with reasonable diligence, have ascertained the degree of damage of the three shipments within nine months of their delivery.

Plaintiff contends that the first of these two scenarios applies to the present controversy. According to One Step Up, J.B. Hunt failed to comply with the obligations set forth by 49 C.F.R. § 1005.5, which states that carriers who receive a written or electronically transmitted claim for loss or damage to cargo:

. . . shall pay, decline, or make a firm compromise settlement offer in writing or electronically to the claimant within 120 days after receipt of the claim by the carrier; Provided, however, That, if the claim cannot be processed and disposed of within 120 days after the receipt thereof, the carrier shall at that time and at the expiration of each succeeding 60-day period while the claim remains pending, advise the claimant in writing or electronically of the status of the claim and the reason

15

for the delay in making final disposition thereof and it
shall retain a copy of such advice to the claimant in its
claim file thereon.

49 C.F.R. § 1005.5.  Plaintiff asserts that defendant did not
"pay, decline, or make a firm compromise settlement offer"
within 120 days of receipt of the claims at issue in this case,
and that there is "no dispute that there is no record of
Defendants [sic] 60 day 'advises' [sic]."  Memorandum in
Opposition to Summary Judgment ("Mem. Opp.") at 8.  Further,
plaintiff contends that the letters submitted, sent by
Transplace to J.B. Hunt demanding resolution of its claims,
"strongly suggest that such advises [sic] do not exist, nor is
there any dispute that Defendant did not retain such records."
Mem. Opp. at 8 – 9.  Although plaintiff can point to no case law
in support, plaintiff makes the argument that the failure of a
carrier to fulfill its obligations under § 1005.5 constitutes a
sufficient reason to estop defendant from raising the nine month
requirement as a defense to plaintiff's claims, pursuant to
Pathway Bellows.

We conclude that defendant's failure to fulfill its
requirements under 49 C.F.R. § 1005.5 does not constitute a
basis for plaintiff to evoke estoppel.  We are mindful that
"[e]stoppel, within the context of the mandatory, statutory and
regulatory scheme [which governs interstate carriers], should
not be lightly found."  Bobst Division of Bobst Champlain, Inc.

v. IML-Freight, Inc., 566 F.Supp. 665, 669 (S.D.N.Y. 1983); accord R.T.A. Corporation v. Consolidated Rail Corporation, 594 F.Supp. 205, 210 (S.D.N.Y. 1984). For example, in Bobst, the shipper argued that the carrier should be estopped from asserting the nine month bar because an agent of the carrier, who was not the claims adjuster for the company, suggested to the shipper that he should write a claim in the form of a letter to him, and that it would subsequently be followed up by the company. 594 F.Supp. at 669. As the Bobst court noted, "[i]n these circumstances, [the agent]'s silence following his receipt of the . . . letter cannot be said to have misled [the claimant] in either of the respects referred to in the first sentence of the Pathway footnote," and thus the claimant could not rely upon estoppel to excuse the untimeliness of the claim. Id. at 669. The court in Bobst distinguished the facts of its case from those before the Third Circuit in Perini-North River Associates v. Chesapeake & O. Ry., 562 F.2d 269 (3d Cir. 1977), where the shipper had invoked the doctrine of estoppel against the defendant's reliance on the time bar for claims. The Bobst court noted that in Perini, the carrier had explicitly told the claimant that no additional claim needed to be filed, and the claimant duly relied upon the carrier's representation. Compare Bobst, 566 F.Supp. at 669-70, with Perini, 562 F.2d at 272-73. Thus, since there was an affirmative misrepresentation on the

part of the carrier in Perini which misled the claimant, the carrier's actions would have constituted a basis for estoppel under the Pathway Bellows footnote.

Here, however, any failure by J.B. Hunt to fulfill its obligations under 49 C.F.R. § 1005.5 cannot have resulted in One Step Up being misled as to the need to file a claim within the specified nine month period. Section 1005.5 is designed to protect the interests of claimants who file claims against carriers by imposing obligations on carriers to investigate, process, and settle claims which are filed with it in a timely fashion. Since plaintiff never made a claim against J.B. Hunt, plaintiff is outside of the scope of entities whom the regulations are designed to protect. Plaintiff's choice to rely upon Wal-Mart and Transplace to pursue claims against J.B. Hunt for these shipments was an independent business decision, made without regard to J.B. Hunt's progress in processing these claims pursuant to § 1005.5. One cannot fault J.B. Hunt for not knowing the reasons behind Wal-Mart and Transplace's withdrawal of their claims, nor could J.B. Hunt have foreseen that the cancellation or rejection of these claims would have had an impact upon plaintiff.

In addition, plaintiff offers no evidence that it was aware of the extent to which J.B. Hunt had or had not met the requirements of § 1005.5 during the period after Wal-Mart and

18

Transplace had filed the claims at issue and while J.B. Hunt was processing the claims.   Indeed, at oral argument, plaintiff's counsel conceded that even now, he does not know the extent of J.B. Hunt's compliance with § 1005.5, and whether J.B. Hunt had sent notices to Wal-Mart or Transplace updating them as to the status of their claims.   See, e.g., Transcript from Oral Argument dated October 25, 2006 ("Tr.") at 16.   If plaintiff did not know at the time that the claims were being processed the extent to which J.B. Hunt was complying with § 1005.5, it is difficult to believe that plaintiff was "misled" by J.B. Hunt into assuming it need not file its own claim.   Thus, there is no basis for estopping J.B. Hunt from raising its defense as against One Step Up, since it did nothing to mislead plaintiff in the manner described by Pathway Bellows.

Plaintiff argues that it could not file its own claim against J.B. Hunt because for much of the nine month period, it was in a "state of repose," as Wal-Mart and Transplace were in the midst of pursuing their claims against J.B. Hunt and plaintiff had been fully paid by Wal-Mart.   See, e.g., Tr. at 14, 19-20.   However, plaintiff conceded at oral argument that it could have filed a claim upon learning that there were incomplete deliveries, see id. at 6-7, and could also have done so during the periods of time that Wal-Mart had deducted amounts for shipments #1 and #3 from plaintiff's account, before

changing course and reversing its deductions at plaintiff's request. Id. at 24. Further, One Step Up had the opportunity to ask both Wal-Mart and Transplace to assign their claims to One Step Up in the event that Wal-Mart decided to backcharge its account with One Step Up in lieu of pursuing claims against J.B. Hunt. Plaintiffs must have foreseen this possibility since Wal-Mart had previously shown a willingness to resolve its losses in this fashion. One Step Up's failure to take steps to protect itself against this outcome cannot constitute a reason to invoke estoppel as against J.B. Hunt.[7]

Thus, defendant is entitled to summary judgment against plaintiff for plaintiff's failure to file a written claim within the specified nine month period, a condition precedent to recovery under the applicable bill of ladings.

---

[7] Further, we would like to note that were we to have found plaintiff's estoppel argument compelling, at best it would have allowed plaintiff to pursue the claims as filed by Wal-Mart and Transplace for these shipments -- essentially stepping into the shoes of the other parties who were impacted by the incomplete and damaged shipments. However, plaintiff's pursuit of these claims would have been futile, since claims for shipments #1 and #3 had been cancelled, and the claim for shipment #2 had been rejected by J.B. Hunt.

20

## CONCLUSION

For the aforementioned reasons, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated:     New York, New York
           November 22, 2006

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

21

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Plaintiff

Harlan M. Lazarus, Esq.
Lazarus & Lazarus, P.C.
240 Madison Avenue, 8th Floor
New York, NY 10016

Counsel for Defendant

Barry N. Gutterman, Esq.
Robert Briere, Esq.
Barry N. Gutterman & Associates, P.C.
60 East 42nd Street, 46th Floor
New York, NY 10165